IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

WHITECAP MOUNTAIN RECREATION, INC.,
PENOKEE SKIING COMPANY, LLC, and
PENOKEE HOLDING COMPANY, LLC,

                 Plaintiffs,

v.

AXIS SURPLUS INSURANCE COMPANY,

                 Defendant.

OPINION and ORDER

20-cv-424-jdp

---

Plaintiffs own a ski resort that was heavily damaged by a fire in January 2019. The resort had been insured by defendant AXIS Surplus Insurance Company. But plaintiffs had stopped paying premiums months before the fire and declined to renew the policy. AXIS notified plaintiffs that the policy would be canceled for nonpayment on December 20, 2018; the policy term expired the next day, December 21. Plaintiffs contend that AXIS's notice of cancellation was ineffective, and they are thus entitled to a statutory right of automatic renewal under Wis. Stat. § 631.36(4), which would extend coverage to the date of the fire.

Both sides move for summary judgment. Dkt. 23 and Dkt. 26. The Wisconsin Insurance Code, Wis. Stat. Chs. 600–655, protects insureds in many ways, including by specifying the manner in which policies may be cancelled and sometimes requiring notice of nonrenewal. But the statutory right of automatic renewal does not apply to surplus lines insurers like AXIS. And even if it did, plaintiffs here resolutely declined to pay their premiums and ignored all efforts by their agent to reinstate or renew their policy. AXIS's cancellation

notice was effective December 30; plaintiffs did not have coverage under the policy for the January fire. The court will grant AXIS's motion, deny plaintiffs' motion, and close this case.[1]

## UNDISPUTED FACTS

Plaintiff Whitecap Mountain Recreation, Inc. owns and operates a ski resort in Upson, Wisconsin. Plaintiffs Penokee Skiing Company, LLC and Penokee Holding Company, LLC acquired control of Whitecap in mid-2018. David Dziuban, a member and co-owner of Penokee Skiing, began running the resort around this time. The court will refer to the plaintiffs collectively as "Whitecap."

Defendant AXIS Surplus Insurance Company had provided Whitecap with commercial property insurance since 2012. The term of the policy at issue was December 21, 2017, to December 21, 2018. Whitecap was represented in its relationship with AXIS by a retail agent, Anna Mark, who worked for USI Insurance Group (which isn't a party to this lawsuit). A retail agent represents the insured, not the insurer, working to secure and maintain insurance on her client's behalf, including assisting the client with insurance applications.

Mark had arranged for Whitecap to pay its premiums through a premium finance company, AFCO (which also isn't a party). AFCO would pay a full-year premium to AXIS in a lump sum, after which Whitecap was required to repay AFCO in monthly installments. (AFCO made the lump-sum payment to AXIS through intermediaries, including USI, but that part of the process isn't material.)

---

[1] AXIS also moves to supplement its reply brief in support of its motion for summary judgment by providing copies of several cases cited in the brief. Dkt. 52. The supplementation is unnecessary, but it poses no prejudice to plaintiffs, so the court will grant the motion.

Whitecap stopped making payments to AFCO in June 2018. AFCO sent Mark a notice of cancellation of the policy for nonpayment, which Mark sent to Dziuban on August 14, 2018. Mark told Dziuban that Whitecap needed to make a payment to avoid cancellation of the policy. Whitecap made a partial payment, apparently the last payment made by Whitecap toward the policy.

From October through December 2018, Mark communicated regularly to Whitecap that it was in default on its payments and that it needed to reinstate and renew its insurance. But Whitecap made no further payments and made no effort to reinstate or renew the policy.

On November 28, Mark sent Laura Fogelson (Dziuban's assistant, who had taken over the insurance administration duties at Whitecap) a notice of cancellation for nonpayment from AFCO. On December 7, Mark informed Fogelson that this was Whitecap's last chance, and that Mark would be forced to process the cancellation if payment were not made by December 10. But Dziuban resolutely refused to make further payments.

On December 20, AXIS sent a notice of cancellation to Whitecap through Mark, indicating that Whitecap's coverage had been cancelled effective October 13, 2018. Dziuban dictated a response, which he directed Fogelson to send to Mark:

> The problem is we don't owe any of this money if it is related to the old company and the dead owners. Going forward, we are not paying for debts that Penokee Skiing never incur[r]ed. That is like asking you to pay for a policy you never took out on a property you never owned and it makes no sense and is fiscally negligent.

Dkt. 35-34, at 1.

The policy term expired on December 21, 2018. The lodge at the ski resort was destroyed by fire on January 18 and 19, 2019. Whitecap notified AXIS of the loss the following day, and then submitted a proof of loss estimating that it would cost $5 million to rebuild the

3

lodge. AXIS denied coverage; Whitecap filed suit in Iron County Circuit Court; AXIS removed the case to this court.

This court has jurisdiction over the case under 28 U.S.C. § 1332 because the parties are diverse in citizenship and more than $75,000 is in controversy.

ANALYSIS

Summary judgment is appropriate if the moving party shows that there is no genuine dispute of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). On cross-motions for summary judgment, the court evaluates each motion separately, construing the facts and drawing all reasonable inferences from those facts in favor of the nonmovant. *Wis. Cent., Ltd. v. Shannon*, 539 F.3d 751, 756 (7th Cir. 2008). In this case, the facts are undisputed and the case turns on interpretation of the policy and on Wisconsin law governing insurance policy cancellation and nonrenewal.

Insurance policies are contracts, to which general principles of contract law apply. But Wisconsin law includes certain principles designed to protect the insured. The court must interpret policy language "to give effect to the intent of the parties," using the language's "plain and ordinary meaning, as understood by a reasonable person in the position of the insured." *Phillips v. Parmelee*, 2013 WI 105, ¶ 12, 351 Wis. 2d 758, 840 N.W.2d 713.

Policy renewals are regulated by the Wisconsin Insurance Code. Wisconsin gives most insureds the right to renew a policy unless advance notice is given of the insurer's intent not to renew. The pertinent statutory subsection provides:

> [A] policyholder has a right to have the policy renewed, on the terms then being applied by the insurer to similar risks, for an additional period of time equivalent to the expiring term if the agreed term is one year or less, or for one year if the agreed term

4

> is longer than one year, unless at least 60 days prior to the date of expiration provided in the policy a notice of intention not to renew the policy beyond the agreed expiration date is mailed or delivered to the policyholder, or with respect to failure timely to pay a renewal premium a notice is given, not more than 75 days nor less than 10 days prior to the due date of the premium, which states clearly the effect of nonpayment of premium by the due date.

Wis. Stat. § 631.36(4)(a). The purpose of this provision is to prevent an insurer from surprising an insured with a last-minute decision not to renew a policy, leaving the insured without time to secure alternative coverage. *Magyar v. Wis. Health Care Liab. Ins. Plan*, 2001 WI 41, ¶ 14, 242 Wis. 2d 491, 502, 625 N.W.2d 291, 295. Whitecap contends that it was entitled to automatic renewal of its policy under Wis. Stat. § 631.36(4), which would extend its coverage to the January fire.

## A. AXIS is a surplus lines insurer; the policy was not subject to the statutory right of renewal

The nonrenewal provisions of § 631.36 do not apply to AXIS, which, as a surplus lines carrier, is not comprehensively regulated under Wisconsin's insurance code. Wis. Stat. § 618.41(13)(b)(2) expressly provides that *domestic* surplus insurance carriers are not subject to the non-renewal provisions in the Wisconsin insurance code. Although AXIS is not a domestic surplus carrier, Whitecap concedes that, as a general rule, neither foreign nor domestic surplus carriers are subject to the nonrenewal provisions in § 631.36.

To overcome this impediment, Whitecap contends that AXIS failed to comply with the proposal disclosure requirement in Wis. Stat. § 618.41(4), which requires that the policyholder be informed that the agent is proposing a policy from an insurer that is not comprehensively regulated. This violation would render the AXIS policy "illegal" under § 618.44, which would

mean that the policy would be subject to the full requirements of the Wisconsin Insurance Code, including the non-renewal provisions in § 631.36.

But Whitecap raised this issue for the first time in response to AXIS's motion for summary judgment. Whitecap did not plead that AXIS had violated § 618.41(4), nor did Whitecap allege that AXIS had failed to provide notice of its status as a surplus lines carrier that was not comprehensively regulated under Wisconsin law. AXIS was not on notice that it would have to defend such an allegation, and it was thus deprived of the opportunity to conduct discovery on the issue by, for example, acquiring the retail agent's proposals for previous policy years. Whitecap's claim that AXIS failed to comply with § 618.41(4) is forfeited. *See Anderson v. Donahoe*, 699 F.3d 989, 997 (7th Cir. 2012) ("[A] plaintiff 'may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment.'").

Even if not forfeited, Whitecap's § 618.41(4) argument would fail on the merits. Mark's proposal to Whitecap included a "Notice of Surplus Lines Placement." Dkt. 35-14, at 18. The notice includes a caution that the insurer would probably not be backed up by state-sponsored guaranty associations, but it does not include the language suggested in the form disclosure in the appendix to the applicable section of the Wisconsin Administrative Code. Wis. Admin. Code INS 6.17. But under the regulation, the proposal disclosure requirement falls to the agent who proposes to place the insurance with a surplus lines carrier, in this case Mark and USI. *Id*. AXIS fully complied with *its* statutory obligation under § 618.41(9), which required it to "stamp" a specified surplus lines disclosure on the policy itself. Mark and USI were Whitecap's agent, and Whitecap makes no claim against them. The parties agree that AXIS never communicated directly with Whitecap, so any failure by Mark or USI to provide the proposal disclosure required under § 618.41(4) cannot be ascribed to AXIS.

The court concludes that AXIS did not violate § 618.41(4) and the policy is not "illegal" under § 618.44. Thus, because AXIS is a surplus lines insurer, the right of renewal in § 631.36 did not apply to Whitecap policy, and AXIS was under no obligation to provide advance notice of nonrenewal. The policy expired at the end of its term on December 21, 2018.

The court's analysis could end here, but the court will consider Whitecap's remaining arguments.

**B. AXIS's notice of cancellation was effective on December 30, 2018**

Even if Whitecap's AXIS policy were one subject to the statutory right of renewal, Whitecap would be entitled to automatic renewal only if it had maintained the policy so that it was in effect at the end of the 2017-2018 policy year. But Whitecap failed to make premium payments, so AXIS notified Whitecap that it had cancelled the policy on December 20, 2018. Dkt. 35-33, at 2.

Whitecap contends that the cancellation was ineffective under the terms of the policy. The cancellation provision in the policy provides:

> [AXIS] may cancel this policy by mailing or delivering to [Whitecap] written notice of cancellation at least:
>
> a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or
>
> b. 30 days before the effective date of cancellation if we cancel for any other reason.

Dkt. 24-1, at 6. The court must interpret this policy language "to give effect to the intent of the parties," using the language's "plain and ordinary meaning, as understood by a reasonable person in the position of the insured." *Phillips v. Parmelee*, 2013 WI 105, ¶ 12, 351 Wis. 2d 758, 840 N.W.2d 713.

The cancellation notice purported to cancel the AXIS policy retroactively, as of October 13. Dkt. 35-33, at 2. But retroactive cancellation would be contrary to the terms of the policy, which required advance notice. If an insurer attempts to cancel an insurance policy retroactively despite a requirement of a defined period of notice before cancellation, the policy remains in effect from the cancellation attempt for a time equal to the required period of notice. *Benefit Trust Life Ins. Co. v. Office of the Comm'r of Ins.*, 142 Wis. 2d 582, 419 N.W.2d 265, 270 (1987). So the notice of cancellation was effective either on December 30, 2018, or on January 19, 2019, depending on the reason for cancellation.

The cancellation notice stated, "The reason for cancellation is default of payment to Premium Finance Company." *Id.* This, of course, came as no surprise to Whitecap. AFCO had notified Whitecap of its default of payment on August 14, 2018. And from October through November, Mark had persistently informed Whitecap of its default and the risk that its policy would be canceled. Finally, in response to the December 20 notice of cancellation, Dziuban unequivocally disclaimed any intent to pay Whitecap's premiums. Nevertheless, Whitecap now contends that the cancellation was for reasons other than nonpayment of premiums, and thus the cancellation notice was effective only 30 days later, on January 19, 2019. Whitecap contends that default of payment to AFCO is not the same as nonpayment of premiums.

The court must interpret the policy from the perspective of a reasonable person in the position of the insured. But Whitecap's position is beyond unreasonable. Under Whitecap's interpretation of the policy, the policy was impervious to cancellation for nonpayment of premiums because Whitecap had arranged to pay its premiums through AFCO, a premium financing company. In Whitecap's view, *any* cancellation was necessarily for reasons other than nonpayment, entitling it to 30 days notice of cancellation. Whitecap disregards the fact that

8

AFCO notified AXIS of Whitecap's default and requested cancellation of the policy and the return of the premium payments. AFCO, Mark, and AXIS had given Whitecap every opportunity to maintain its insurance policy. The only reasonable interpretation of the policy is that under these circumstances, AXIS was entitled to cancel the policy for nonpayment of premiums, and it did so.

The court concludes that AXIS's notice of cancellation was delivered on December 20, 2018, and that it was effective ten days later, on December 30, 2019. So even if the AXIS policy were one subject to the automatic right of renewal under § 631.36(4), Whitecap would have been entitled to automatic renewal coverage only until the cancellation for nonpayment was effective. Wis. Stat. § 631.36(4), when it applies, provides the insured with a right to renewal, but it does not provide a right to free insurance, particularly when the insured has disclaimed any obligation to pay the premiums.

ORDER

IT IS ORDERED that:

1. Defendant AXIS Surplus Insurance Company's motion to supplement its brief in reply, Dkt. 52, is GRANTED.

2. AXIS's motion for summary judgment, Dkt. 26, is GRANTED

3. Plaintiffs Whitecap Mountain Recreation, Inc., Penokee Skiing Company, LLC, and Penokee Holding Company, LLC's motion for summary judgment, Dkt. 23, is DENIED.

4. The clerk of court is directed to enter judgment in favor of defendant and close this case.

Entered August 4, 2021.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge
